### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER COLLINS, ET AL., | : | |
| Plaintiffs, | : | CIVIL CASE NO. |
| | : | 3:20-CV-01504 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ALONSO, ANDALKAR & FACHER, P.C., | : | |
| ET AL., | : | September 30, 2021 |
| Defendants. | : | |

### RULING ON MOTIONS TO DISMISS
### (DOC. NOS. 15, 16)

## I.    INTRODUCTION

This action arises out of an eight-year-long series of disputes between shareholders of 400 West 14th (the "Company"), a New York corporation operating a popular bar, Gaslight.  The parties to the action are: (1) plaintiff Peter Collins ("Mr. Collins"), a Company shareholder; (2) plaintiff Denise Collins ("Mrs. Collins"), Mr. Collins' wife; (3) defendant William Reddy ("Reddy"), a Company shareholder; (4) defendant David Curran ("Curran"), a Company shareholder; (5) defendant Mark J. Alonso ("Alonso"), the Company's counsel; and (6) defendant Alonso, Andalkar & Facher, P.C. ("AAF"), Alonso's firm.  Mr. and Mrs. Collins brought this action against the defendants, who filed two Motions to Dismiss.

Pending before the court are: (1) Reddy and Curran's Motion to Dismiss the Complaint (Doc. No. 15) ("Reddy and Curran Mot. to Dismiss") and (2) Alonso and AAF's Motion to Dismiss the Complaint (Doc. No. 16) ("Alonso and AAF Mot. to

1

Dismiss"). The plaintiffs oppose these Motions. See Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss (Doc. No. 33) ("Pls.' Opp'n").

For the reasons stated below, the court grants both Motions to Dismiss in their entirety.

## II.    BACKGROUND

A.    Factual Background

1.    The Origins of the Dispute

Mr. Collins, Reddy, Curran, and a fourth individual not party to this litigation, Matthew Reines ("Reines"), have been equal shareholders in the Company since 1996. Compl. at ¶ 10. Reddy and Curran are allegedly New York residents, while Mr. Collins is currently a resident of Connecticut.[1] Id. at ¶ 1, 5-6. Together, they owned and operated Gaslight, a popular New York City bar and pizzeria. Id. at ¶ 11.[2]

After about 16 years of business, in 2012, Mr. Collins and Reines began to suspect Reddy and Curran of "misfeasance." Id. at ¶ 19. Reddy and Curran, Mr. Collins alleges, began trying to terminate Mr. Collins' shares and shareholder rights. Id. Around the same time, Reddy and Curran were consulting the Company's attorney, Alonso, a New York attorney at AAF, a New York law firm. Id. at ¶¶ 3-4. Unbeknownst to Mr. Collins, Alonso advised Reddy and Curran to seek tax advice and bar Mr. Collins from the Company's financial records. Id. at ¶¶ 20-21. Consequently, around March 12,

---

[1] While the Complaint alleges that Reddy and Curran are New York residents and that Reddy is also a Florida resident, Mr. Collins states in his Affidavit that Reddy and Curran are Florida citizens. See Mr. Collins' Aff. (Doc. No. 34) at ¶¶ 7-8. It is undisputed that neither Reddy nor Curran is a Connecticut resident or citizen.

[2] The Company permanently closed for business on February 28, 2017, and any remaining properties are held in New York, Pennsylvania, or Florida. Compl. at ¶ 12.

2013, Reddy and Curran entered into the Internal Revenue Service's Domestic Voluntary Disclosure Program to disclose $8.3 million of previously unreported revenues.  Id. at ¶ 29.  Mr. Collins did not learn about these disclosures until nearly seven months later.  Id. at ¶ 31.

On March 4, 2013, the rash of disputes between the shareholders began when Mr. Collins and Reines sued Reddy and Curran in the New York Supreme Court, alleging that the latter pair had misappropriated $5 million from the Company.  Id. at ¶ 26.  In the same matter, Mr. Collins and Reines also called for Alonso and AAF's termination as counsel because of a conflict of interest.  Id. at ¶¶ 26-27.  Reddy and Curran filed for a temporary restraining order seeking to compel arbitration as well as a motion to hold Mr. Collins in contempt of court.  Id. at ¶¶ 74-75.  The court ordered the case into arbitration in May of 2013.  Id. at ¶ 33.  Arbitration hearings ensued, and on December 11, 2014, the American Arbitration Association issued a Partial Final Award that gave Reddy control of the Company's ordinary business.  Id. at ¶ 38.

On November 17, 2016, Mr. Collins brought a second arbitration against Reddy and Curran, alleging breach of the Shareholder Agreement and the covenant of good faith and fair dealing, violations of New York State Business Corporation Law and the General Business Law, and conversion.  See Reddy and Curran Mot. to Dismiss at Ex. 6.[3] Nearly two years later, in August 2018, the arbitrator dismissed Mr. Collins' claims in their entirety on res judicata grounds.  See id. at Ex. 7.

---

[3] The Collinses do not expressly mention this second arbitration in their Complaint, but it is well established that "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings." Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) (citing Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir.2006) (citation omitted)); see also Beaton v. Metro. Transportation Auth. New York City Transit, No. 15 CIV. 8056 (ER), 2016 WL 3387301, at *4

       2.      Matters at Issue in the Instant Case

Although the Complaint references proceedings from 2013 forward, four actions filed in New York in 2016 and 2017 form the basis for the plaintiffs' vexatious litigation claims in the instant case.  Pls.' Opp'n at 18-19.

First, in 2016, Reddy and Curran "conspired to file" a verified petition seeking to "turnover Plaintiff['s] shares to the Company." [4] Compl. at ¶ 77.  A summons was served on Mr. Collins in Connecticut. Mr. Collins' Aff. at ¶ 45 (Doc. No. 34).[5]  The petition, filed in New York County Supreme Court, was removed to the United States District Court for the Southern District of New York on January 3, 2017 and was voluntarily dismissed on September 15, 2017.  See Pls.' Opp'n at Ex. A.

Second, in 2016, Reddy and Curran "under the Company veil" filed a complaint for fraudulent conveyance against Mrs. Collins in New York County Supreme Court.[6] Compl. at ¶ 78.  A summons for this case was sent to Mrs. Collins' Fairfield, Connecticut address. See Pls.' Opp'n at Ex. B.  The case was removed to the United States District Court for the Southern District of New York on January 3, 2017 and was voluntarily dismissed on January 30, 2019.  See id.

---

(S.D.N.Y. June 15, 2016) ("While the Court is permitted to take judicial notice of the existence of the Arbitration Decision on a motion to dismiss, it cannot do so to establish the truth of the facts asserted therein").

[4] The case's New York index number is 400 West 14th Inc. v. Peter S. Collins, 656399/2016, and its docket number in the Southern District of New York is 400 West 14th Inc. v. Peter S. Collins, 1:17-cv-00007-LLS. See Pls.' Opp'n at 19.

[5] The court may consider the contents of the parties' "affidavits and supporting materials" in determining whether a prima facie showing of personal jurisdiction has been established. Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir.1981).

[6] The case's New York index number is 400 West 14th Inc. v. Denise Collins et al. 160159/2016, and its docket number in the Southern District of New York is 400 West 14th Inc. v. Denise Collins et al., 1:17-cv-00005-LLS. See Pls.' Opp'n at 19.

Third, in 2017, the defendants filed a third-party complaint against Mr. Collins in an action bought in the U.S. District Court for the Southern District of New York by a former Gaslight employee.[7]  Compl. at ¶ 79.  The summons for this third-party complaint was sent to Mr. Collins' New York address.  See Pls.' Opp'n at Ex. C.  The third-party complaint was voluntarily dismissed without prejudice on July 15, 2017.  See id.

Finally, in 2017, the defendants filed for summary judgment in lieu of complaint against Mr. Collins in New York County Supreme Court, seeking judgment on unfulfilled capital calls.  Compl. at ¶ 80.[8]  A summons was sent to Mr. Collins' Fairfield, Connecticut address.  See Pls.' Opp'n at Ex. D.  The matter was discontinued by stipulation without prejudice on May 15, 2019.  See id.

### 3.   Counts Alleged

The Collinses bring three Counts: (1) civil conspiracy against all defendants; (2) common law vexatious litigation against Reddy and Curran; and (3) aiding and abetting vexatious litigation against Alonso and AAF.

In Count One, the Collinses allege that all of the defendants engaged in a conspiracy to commit vexatious litigation.  Compl. at ¶¶ 47-83.  Pls.' Opp'n at 33.  The Collinses bring Count Two against Reddy and Curran for common law vexatious litigation under New York law, alleging that the defendant shareholders brought suit against the Collinses "without probable cause" and "with malice to vex and trouble Plaintiff(s)."  Compl. at ¶¶ 84-88.  In Count Three, the Collinses allege that Alonso and

---

[7] This allegation refers to the Third Party Complaint in Reyes et al. v. 400 West 14th Inc. et al., 1:17-cv-00302-RA. See Pls.' Opp'n at 19.

[8] This case's New York index number is 400 West 14th Inc. v. Matthew Reines et al., 657426/2017. See Pls.' Opp'n at 19.

AAF aided and abetted the vexatious litigation, "knowingly and substantially assist[ing] Shareholders [sic] wrongful actions of commencing and prosecuting litigation." Compl. at ¶¶ 89-93.

B.     Procedural Background

Mr. and Mrs. Collins filed the instant action in the Connecticut Superior Court, Judicial District of Fairfield, on September 1, 2020.[9]  Reddy and Curran removed the case to the United States District Court for the District of Connecticut under sections 1132(a) and 1141 of title 28 of the United States Code.

## III.    LEGAL STANDARD

A.     Personal Jurisdiction: 12(b)(2)

A court must grant a motion to dismiss if it lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2).  On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a plaintiff bears the burden of "mak[ing] a prima facie showing that jurisdiction exists." SPV Osus Ltd. v. UBS AG, 882 F.3d 333, 342 (2d Cir. 2018).  At this stage, all allegations "are to be construed in the light most favorable to the plaintiff." Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013) (internal quotation marks omitted).  "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996).  However, "[a] plaintiff must establish the court's jurisdiction with respect to each claim asserted." Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004).

---

[9] The Collinses also filed a complaint alleging the same three counts in Connecticut state court on June 13, 2019, see Reddy and Curran Mot. to Dismiss at Ex. 12, which Reddy and Curran removed to the United States District Court for the District of Connecticut.  Id. at Ex. 13.  The Collinses voluntarily dismissed their complaint on August 22, 2019.  Id.

6

B.    Failure to State a Claim: 12(b)(6)

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  The court takes all factual allegations in a complaint as true and draws all reasonable inferences in the plaintiff's favor.  See Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015).  However, the tenet that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

 To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955).  Dismissal under Rule 12(b)(6) is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." Associated Financial Corp. v. Kleckner, 480 Fed. App'x 89, 90 (2d Cir. 2012) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

**IV.    DISCUSSION**

A.    Personal Jurisdiction[10]

To resolve questions of personal jurisdiction in a diversity action, courts follow a

two-part inquiry, assessing (1) whether jurisdiction is proper under the forum state's law,

Brown v. Lockheed Martin Corp., 814 F.3d 619, 631 (2d Cir. 2016), and (2) "whether the

court's assertion of jurisdiction . . . comports with the requirements of due process."

Metro. Life Ins. Co., 84 F.3d at 567 (2d Cir. 1996); see also Lombard Bros., Inc. v. Gen.

Asset Mgmt. Co., 190 Conn. 245, 250 ("[The] first inquiry must be whether our long-arm

statute authorizes the exercise of jurisdiction . . . . Only if we find the statute to be

applicable do we reach the question whether it would offend due process to assert

jurisdiction.").  Connecticut has adopted one long-arm statute for individuals and one for

corporations.  Neither provision grants the court jurisdiction over the defendants.

1.    Jurisdiction Over Individuals Under Connecticut's Long-Arm Statute
52-59b(a)

Connecticut's long-arm statute for individuals, section 52-59b(a) of the

Connecticut General statutes, allows a nonresident to be subjected to suit in

Connecticut if the individual:

> (1) Transacts any business within the state; (2) commits a tortious act within
> the state, except as to a cause of action for defamation of character arising
> from the act; (3) commits a tortious act outside the state causing injury to
> person or property within the state . . . if such person . . . (A) regularly does
> or solicits business, or engages in any other persistent course of conduct,
> or derives substantial revenue from goods used or consumed or services
> rendered, in the state, or (B) expects or should reasonably expect the act
> to have consequences in the state and derives substantial revenue from

---

[10] The court lacks general jurisdiction over the defendants. It is uncontested that the individual
defendants reside outside of Connecticut and did not so regularly make contacts with Connecticut to be
considered "essentially at home" in the State.  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564
U.S. 915, 919 (2011).  Likewise, that AAF is incorporated in and has its principal place of business in New
York is undisputed, rendering it "at home" in New York, not Connecticut.  Id.

interstate or international commerce (4) owns, uses or possesses any real property situated within this state; or (5) uses a computer . . . or computer network located within the state.

Conn. Gen. Stat. § 52-59b(a).

Here, the Collinses have not alleged that any of the defendants owns, uses, or possesses real property in Connecticut, nor that they use a computer or computer network located in Connecticut, thus sections 52-59b(a)(4) and (5) are not at issue.

The court therefore considers the remaining sections of the long-arm, beginning with sections 52-59b(a)(1) and (3) before turning to section 52-59b(a)(2).

> a.    Section 52-59b(a)(1): Commits a Tortious Act Outside
> Connecticut Harming a Person or Property in Connecticut

With respect to section 52-59b(a)(1), the Collinses have not alleged that any of the defendants transacted business in Connecticut.  They have pleaded neither that (1) the defendants "invoked the benefits and protection of Connecticut's laws by virtue of [their] purposeful Connecticut related activity", nor that (2) "[the plaintiff's] cause of action . . . arose from [the defendant's] business activity in [Connecticut]." See Ryan v. Cerullo, 282 Conn. 109, 119-21 (finding a New York accountant who prepared a Connecticut resident's tax return did not "transact business" in Connecticut because "the relationship or nexus" between the defendant's business activities and Connecticut was "simply too attenuated"); see also Rosenblit v. Danaher, 206 Conn. 125, 138, 140–41 (1988) (Massachusetts attorney who represented plaintiffs in connection with Massachusetts development project was not subject to jurisdiction under section 52–59b(a)(1) even though Massachusetts attorney had business meeting with plaintiff in Connecticut).

Indeed, the Collinses have failed to allege even an "attenuated" relationship between Reddy, Curran, or Alonso's business activities and Connecticut.  See Ryan, 282 Conn. at 121.  The Complaint's business-related allegations center on the Company, a New York corporation operating Gaslight, a New York business, represented by AAF, a New York P.C.  Compl. at ¶¶ 10-11, 3-4.  No allegations counter the defendants' statements that they have not lived in, solicited business from, or derived substantial revenue from Connecticut.  Reddy's Aff. at ¶¶ 4-6, 8-9 (Doc. No. 15-16); Curran's Aff. at ¶¶ 5-6 (Doc. No. 15-17); Alonso's Aff. at ¶¶ 5-7 (Doc. No. 18). Thus, it is clear that the defendants have not transacted business in Connecticut, and, accordingly, that the Collinses' vexatious litigation, civil conspiracy, and aiding and abetting claims did not arise from business activity conducted by the defendants in Connecticut.  Accordingly, the court cannot assert jurisdiction under section 52-59b(a)(1).

> b.    Section 52-59b(a)(3): Commits a Tortious Act Outside
> Connecticut Harming a Person or Property in Connecticut

Section 52-59b(a)(3) permits jurisdiction over nonresident individuals who commit a tort outside of Connecticut causing harm in Connecticut.  However, the Collinses have not alleged that any of the defendants "regularly [do] or [solicit] business, [engage] in any other persistent course of conduct, or [derive] substantial revenue from goods used or consumed or services rendered, in the state" as required under this section of the long-arm. Bloom v. Bloom Family Ltd. P'ship, No. FBTCV196084463S, 2020 WL 854027, at *5 (Conn. Super. Ct. Jan. 17, 2020) (alterations in original) (citing Conn. Gen. Stats. § 52-59b(a)(3)). Nor have they pleaded that the defendants derive substantial revenue from interstate or international commerce.  Id.  Therefore, section

52-59b(a)(3) does not confer jurisdiction over the defendants.  See Sanchez v. Corona, 283 F.Sup.2d 648, 654 (D.Conn. 2003) (holding that there was no jurisdiction without these allegations).

### c.    Section 52-59b(a)(2): Commits a Tortious Act Within Connecticut

The Collinses assert three causes of action based in tort law: vexatious litigation under New York's common law cause of action, conspiracy to commit vexatious litigation, and aiding and abetting vexatious litigation.  See Compl. at ¶¶ 47-93. However, none of the plaintiffs' claims plausibly allege that any individual defendant committed any alleged tort in Connecticut.

### i.    Vexatious Litigation: Reddy and Curran

For the purposes of jurisdiction under section 52-59b(a)(2), the tortious act in a vexatious litigation suit occurs where the action is filed, not where process is served.[11] See Gilbert v. Zivtech, LLC, No. CV176074279S, 2018 WL 3715572, at *8 (Conn. Super. Ct. July 5, 2018) (finding no personal jurisdiction under section 52-59b(a)(2) over an allegedly vexatious action filed in Pennsylvania and served on a Connecticut resident because "the alleged tort took place, if at all, in Pennsylvania") (citing Schaefer v. O.K. Tool Co., Inc., 110 Conn. 528, 533 (1930)).

Here, the Collinses do not allege that the defendants filed any suits in Connecticut.  Each of the four cases at issue was filed in the New York Supreme Court

---

[11] The Collinses bring their vexatious litigation claims for money damages under New York common law.  See Compl. at ¶ 88, p. 17.  As discussed in more detail following, see, pp., 17-19, infra, "vexatious litigation" is not a cause of action for damages under New York law.  Nonetheless, Connecticut's law regarding personal jurisdiction over vexatious litigation claims makes clear that the court would not have jurisdiction over any such claims if the cause of action were valid, because the suits were filed in New York.

or the U.S. District Court for the Southern District of New York.  <u>See</u>, pp. 4-5, <u>supra</u>.  In fact, with the exception of the instant case,[12] all of the alleged litigation or arbitration over the history of the dispute between the Collinses and the defendants has taken place in New York.  <u>See</u>, pp. 3-5, <u>supra.</u>  Thus, any tortious act of vexatious litigation occurred not in Connecticut but in New York, where the actions were filed.

The Collinses argue that summonses, capital calls, and demand letters sent by the defendants to the Collinses in Connecticut constitute tortious acts in the state.[13] <u>See</u> Pls.' Mem. at 22-23.  However, for vexatious litigation claims, the relevant tortious action occurs where the case is filed, not where process is served or where corporate communications are sent.  <u>See, e.g.</u>, <u>Gilbert</u>, 2018 WL 3715572, at *8.  Because all of the cases at issue here were filed in New York, any alleged tort occurred in New York, not Connecticut.  Thus, the court cannot exercise jurisdiction over Reddy or Curran under section 52-59b(a)(2) for the vexatious litigation claim.

ii.    Civil Conspiracy: Reddy, Curran, and Alonso

The Collinses' civil conspiracy allegations are likewise insufficient to confer jurisdiction under Connecticut's long-arm.  The Second Circuit has established a three-prong test for jurisdiction over non-resident co-conspirators.  <u>Charles Schwab Corp. v. Bank of Am. Corp.</u>, 883 F.3d 68, 87 (2d Cir. 2018).  "The plaintiff must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-

---

[12] <u>See</u>, note 9, <u>supra</u>.

[13] The summons for the third-party complaint in <u>Reyes et al. v. 400 West 14th Inc. et al.</u>, 1:17-cv-00302-RA was sent to Mr. Collins' New York address. <u>See</u> Pls.' Opp'n at Ex. C.  The other three summonses were served in Connecticut. <u>See</u> Mr. Collins' Aff. at ¶ 45; Pls.' Opp'n at Exs. B, D.

conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." Id. (citation omitted).

First, the Collinses have not made a prima facie showing of conspiracy, as a civil conspiracy claim must be alleged concurrently with a cognizable substantive tort and, under New York law, no cause of action exists for vexatious litigation claims for damages.  See, pp. 17-19, infra.

Second, even assuming, arguendo, the Collinses allegations were sufficient to make a prima facie showing that a conspiracy existed, they have not shown that any alleged co-conspirator's "overt acts in furtherance of the conspiracy had sufficient contacts" with Connecticut to subject the defendants to jurisdiction there under section 52-59b(a)(2).  See Charles Schwab Corp. 883 F.3d at 87; see also Investment Strategies, LLC v. Quatrella. No. FBTCV176062299S, 2018 WL 2423544, at *3-*4 (Conn. Super. Ct. May 4, 2018) (declining to exercise jurisdiction over a defendant with "almost no ties to the forum state" who "communicated periodically" with his Connecticut-resident brother-in-law about an insurance scheme).

Here, only the alleged mailing of service, corporate notices, and demand letters tie the defendants to Connecticut, see Compl. at ¶¶ 59, 71; Mr. Collins' Aff. at ¶ 31, and the mere mailing of non-tortious corporate notices, demand letters, and process does not create sufficient contacts with the State of Connecticut when the underlying tortious transaction at issue—the filing of allegedly vexatious suits—occurred in New York.  See, e.g., Connecticut Artcraft Corp. v. Smith, 574 F. Supp. 626, 630 (D. Conn. 1983) (refusing to extend a conspiracy theory of jurisdiction to an out-of-state defendant who telephoned Connecticut residents, because the underlying torts of misappropriating

trade secrets and inducing a breach of fiduciary duties took place in Florida). Because the defendants' acts did not have sufficient contacts with Connecticut, the court cannot conclude that they committed a tortious act within Connecticut and cannot exercise personal jurisdiction over Reddy, Curran, or Alonso under 52-59b(a)(2) on the basis of the alleged conspiracy.

iii.    Aiding and Abetting Vexatious Litigation: Alonso

As with the Collinses' conspiracy claims, this court cannot exercise jurisdiction over Alonso, a New York attorney, for aiding and abetting vexatious litigation filed in New York.  See Compl. at ¶¶ 4, 89-93.  The Complaint contains no allegations that Alonso was present in Connecticut at any point, let alone that his purported aiding and abetting of the New York litigation took place in Connecticut. Because none of Alonso's alleged conduct occurred in Connecticut, this court cannot exercise personal jurisdiction over him with respect to the aiding and abetting claims.  See Harris v. Wells, 832 F. Supp. 31, 34 (D. Conn. 1993) (finding no personal jurisdiction over a non-resident who allegedly aided and abetted a Connecticut tortfeasor when none of the non-resident's conduct took place in Connecticut).

2.    Jurisdiction Over Corporations Under Connecticut's Long-Arm Statute

A separate long-arm provision, section 33-929(f) of the Connecticut General Statutes, governs personal jurisdiction over suits against foreign corporations in Connecticut.  Corporations may be subject to suit for any cause of action arising, in relevant part, "out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance."  Conn. Gen. Stat. § 33-929(f)(4).  This long-arm applies regardless of whether a foreign

14

corporation "is transacting or has transacted business in [Connecticut] and whether or not it is engaged exclusively in interstate or foreign commerce." Id.

Under section 33–929(f)(4), "a court need only inquire as to the place where the tort occurred because the statute requires tortious conduct in this state." Amerbelle Corp. v. Hommell, 272 F. Supp. 2d 189, 194 (D. Conn. 2003).  The Collinses bring aiding and abetting and conspiracy claims against AAF, but, as with the individual defendants, they fail to allege that AAF committed tortious conduct in Connecticut.  As alleged, AAF, a New York law firm representing a New York corporation, assisted non-Connecticut residents in filing litigation in New York courts regarding disputes stemming from a New York business.  See Compl. at ¶¶ 3-4, 5-6, 10-11, 90-93; see also Pitruzzello v. Muro, 70 Conn. App. 309, 318 (2002) (concluding the court did not have personal jurisdiction because the plaintiff failed to allege that the defendant engaged in conduct in Connecticut that was tortious, although the plaintiff alleged that the defendant sent corporate mailings to the plaintiff).  Given the absence of allegations that AAF's conduct occurred in Connecticut, the court cannot exercise jurisdiction over AAF under the state's long-arm.

### 3.    Jurisdiction Over All Defendants Under Due Process

Even if Connecticut's long-arms did confer jurisdiction over the defendants, to exercise specific jurisdiction over Reddy, Curran, Alonso, or AAF would offend due process.  "To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." SPV Osus Ltd. v. UBS AG, 882 F.3d 333, 343 (2d Cir. 2018) (citation omitted).  The essential question for the minimum contacts analysis is whether a defendant's "suit-related

conduct . . . creates a substantial relationship with the forum State." <u>See</u> <u>Waldman v. Palestine Liberation Org.</u>, 835 F.3d 317, 325 (2d Cir. 2016) (citing <u>Walden</u>, 571 U.S. 283-84).  As for reasonableness, courts consider whether jurisdiction would "comport with fair play and substantial justice." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476 (1985) (internal quotation marks and citation omitted).

The defendants' suit-related conduct in this case does not create a substantial relationship with Connecticut.  The events underlying the Collinses' claims relate to a New York business operated by a New York corporation.  All of the litigation at issue was filed in New York, and the summonses, demand letters, and capital calls mailed from New York to the Collinses in Connecticut do not establish minimum contacts.  <u>See, e.g.</u>, <u>Harris v. Sunset Beach villa Condo. Ass'n, Inc.</u>, No. FSTCV105013382S, 2010 WL 4942975, at *3 (Conn. Super. Ct. Nov. 15, 2010) (service of a summons does not satisfy minimum contacts requirement); <u>see also</u> <u>Int'l All. of First Night Celebrations, Inc. v. First Night, Inc.</u>, No. 3:08-CV-1359, 2009 WL 1457695, at *5 (N.D.N.Y. May 22, 2009) (holding that the sending of a cease-and-desist letter to an in-state plaintiff did not establish minimum contacts).

Finally, exercising jurisdiction over the defendants would not "comport with fair play and substantial justice." <u>Burger King</u>, 471 U.S. at 476.  The defendants in this case cannot reasonably have expected to find themselves in Connecticut court on the basis of actions filed in New York pertaining to a New York business.

Thus, pursuant to the requirements of due process as well as Connecticut's long-arm statutes, the court cannot exercise personal jurisdiction over the defendants.

B.    Failure to State a Claim

Given that the court lacks jurisdiction over the defendants, it will not, and should not, reach the question of whether the defendants have failed to state a claim such that their motion to dismiss under 12(b)(6) would be granted.  See Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963) ("a court without [personal] jurisdiction lacks power to dismiss a complaint for failure to state a claim").  However, because an understanding of the substantive law concerning the claims pleaded is important to the court's consideration of jurisdiction, the court will address the substantive law underlying the Collinses' claims.

1.    Vexatious Litigation: Reddy and Curran

In Count Two, the Collinses seek to recover damages "under New York's common law cause of action for vexatious litigation." Compl. at ¶ 88.  However, no such cause of action exists under New York law.  See Chord Assocs., LLC v. Protech 2003-D, LLC, No. 07-CV-5138 JFB AKT, 2010 WL 3780380, at *5 (E.D.N.Y. Sept. 21, 2010). New York courts have, in some instances, "imposed injunctions barring parties from commencing any further litigation where those parties have engaged in continuous and vexatious litigation." Robert v. O'Meara, 813 N.Y.S.2d 736, 738 (2006); see also Breytman v. Pinnacle Grp., 973 N.Y.S.2d 262, 263 (2013) ("while public policy mandates free access to the courts, when a litigant is abusing the judicial process by harassing individuals solely out of ill will or spite, equity may enjoin

such vexatious litigation."). [14]  Here, however, the Collinses seek only monetary relief.[15]

See Compl. at p. 17.  This court has found no New York case recognizing a vexatious

litigation action for monetary damages.  See Chord Assocs., 2010 WL 3780380, at *5.

        In their Memorandum in Opposition to the defendants' Motions to Dismiss, the

Collinses cite to a Connecticut case stating Connecticut's common law cause of action

for vexatious litigation.  See Pls.' Opp'n at 30 (citing Norberg v. Hurlburt, No.

CV115007329, 2011 Conn. Super. LEXIS 2725 (Super. Ct. Oct. 25, 2011).  To the

extent that the Collinses attempt to rely on Connecticut's common law cause of action,

the court concludes that Connecticut law should not govern these vexatious litigation

claims, all of which were filed in New York.  "Under both federal and Connecticut

choice-of-law rules, a claim for malicious prosecution is governed by the laws of the

state in which the legal proceedings took place, unless a more significant relationship

exists in another state." Kaufman LLC v. Feinberg, No. 3:17-CV-958 (VAB), 2020 WL

509765, at *7 (D. Conn. Jan. 31, 2020) (quoting Turner v. Boyle, 116 F. Supp. 3d 58,

---

[14] A case from the New York Court for the Correction of Errors, the predecessor to the New York
Court of Appeals, suggests that vexatious litigation claims have historically been subject only to equitable
relief in New York.  See City of Brooklyn v. Meserole, 1841 WL 3911, at *6 (N.Y. 1841).  In deciding
whether the Court of Chancery, New York's former court of equity, had jurisdiction to set aside the
proceedings of a lower tribunal, the Court for the Correction of Errors stated, "A court of equity may
interfere and prevent . . . mischief . . . and excessive and vexatious litigation . . . . These are well-known
and well-defined heads of equity jurisdiction . . . . They are wrongs beyond the power of redress by courts
proceeding according to the common law." Id.

[15] The Collinses include a generic prayer for "such other and further relief as the Court deems just
and proper." See Compl. at p. 17.  The Second Circuit has held, in the context of a motion for summary
judgment, that a "general, ritualistic prayer for additional relief" such as "such other and further relief as to
this Court may seem just and proper" is insufficient to demand equitable relief where the relief specifically
requested by the plaintiff is unavailable as a matter of law.  Lightfoot v. Union Carbide Corp., 110 F.3d
898, 910 (2d Cir. 1997).  Thus, the court concludes that the Collinses have not requested injunctive relief.
See Bogle-Assegai v. Comm'n on Hum. Rts. & Opportunities, 331 F. App'x 70, 72 (2d Cir. 2009)
(concluding that the plaintiff was not entitled to press claims for injunctive relief where she failed to
request any specific injunctive relief in her Complaint).

75-76 (D. Conn. 2015)); see also Blake v. Levy, 191 Conn. 257, 262-63 (1983) (noting that vexatious litigation and malicious prosecution are "kindred torts" "where the claimed impropriety arises out of previous litigation").

      2.      Civil Conspiracy to Commit Vexatious Litigation: All Defendants

In Count One, the Collinses allege that all of the defendants engaged in a civil conspiracy to commit vexatious litigation.  See Compl. at ¶ 83; Pls.' Opp'n at 33.  The Collinses do not specify whether they bring their civil conspiracy claims under New York or Connecticut law.  However, the question of which state's law applies to the Collinses' civil conspiracy claim is of no consequence.  Under both New York and Connecticut law, civil conspiracy claims are not independent and must be alleged concurrently with a substantive tort.  Macomber v. Travelers Property and Cas. Corp., 277 Conn. 617, 635-636 (2006) ("There is . . . no independent claim of civil conspiracy . . . . [T]o state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." (internal quotation marks removed) (quoting Harp v. King, 266 Conn. 747, 779 (2003))); see also Marshak v. Marshak, 226 Conn. 652, 669 (1993); Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 969 (1986) ("Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort . . . .").

Here, the Collinses have not alleged a cognizable or actionable tort of vexatious litigation to support their civil conspiracy claim.  See pp. 17-19, supra.  Nor have the plaintiffs pleaded any other substantive torts alongside their civil conspiracy claims.

      3.      Aiding and Abetting Vexatious Litigation: Alonso and AAF

The Collinses' Third Count alleges that Alonso and AAF aided and abetted Reddy and Curran's vexatious litigation.  It is unclear from the face of the Complaint

whether the plaintiffs bring this claim under Connecticut or New York law, but in either case, the claim would fail.  Like a conspiracy claim, an aiding and abetting claim must be joined with a valid substantive tort under the law of Connecticut or New York.  See Efthimiou v. Smith, 268 Conn. 499, 505 (2004) ("[A] civil action of aiding and abetting cannot stand alone and depends upon the existence of a valid underlying cause of action." (quoting Marshak, 226 Conn. 652, 668 (1993))); Goodman v. Janati, No. CV106006582S, 2012 WL 447647, at *4 (Conn. Super. Ct. Jan. 23, 2012) ("the plaintiff needs to allege a legally cognizable underlying tort claim in order to have a legally sufficient aiding and abetting cause of action"); Dickinson v. Igoni, 908 N.Y.S.2d 85, 88 (2010) ("[An aiding or abetting] claim stands or falls with the underlying tort."); Hudson v. Delta Kew Holding Corp., No. 16425–12, 2014 WL 1924324, at *4 (Sup. Ct. 2014) ("Viable claims for the recovery of damages for the aiding and abetting of any tort rest upon allegations of fact constituting the elements of the existence of the underlying tort, knowledge thereof by the aider and abettor, and substantial assistance by the aider and abettor in the achievement of the tortious act.") (collecting cases).

Like the Collinses' civil conspiracy claims, their aiding and abetting claims are supported by no valid underlying vexatious litigation cause of action. See, pp. 17-19, supra.

V.   **CONCLUSION**

Because this court lacks personal jurisdiction over the defendants, the defendants' Motions to Dismiss (Doc. Nos. 15, 16) are hereby granted under Federal Rule of Civil Procedure 12(b)(2).  The court dismisses the plaintiffs' claims against the defendants without prejudice to renew in a jurisdiction where personal jurisdiction over the defendants could be maintained.  The court does not, and cannot, reach a decision

on the merits of the plaintiffs' claims under Counts One, Two, or Three for civil

conspiracy, common law vexatious litigation, and aiding and abetting vexatious

litigation.  See Arrowsmith, 320 F.2d at 221 ("a court without [personal] jurisdiction lacks

power to dismiss a complaint for failure to state a claim").

**SO ORDERED.**

   Dated at New Haven, Connecticut this 30th day of September 2021.


           /s/ Janet. C. Hall⎯⎯⎯⎯⎯⎯
          Janet C. Hall
          United States District Judge